IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS MARSHALL, et al., | : | Case No. 2:21-cv-04336 TJS |
| Plaintiffs, | : | |
| v. | : | |
| PETER C. AMUSO, et al., | : | |
| Defendants. | : | |

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STANDARD OF REVIEW ........ 1

A. Plaintiffs set forth ample plausible First Amendment claims. ........ 2

B. Defendants are not entitled to qualified immunity because viewpoint discrimination violates a clearly established right. ........ 4

C. The individual Defendants acquiesced to the suppression of speech that was critical of the board, its policies, and district employees. ........ 5

D. Simon Campbell has standing because his speech was disrupted and he is self-censoring. ........ 6

E. This Court has already ruled that most of the operative terms of Policies 902 and 922 are facially invalid. ........ 7

F. Defendants enforcement of their own policies establishes municipal liability. ........ 8

G. Plaintiffs have pleaded a viable conspiracy to violate civil rights, especially in light of Amuso and Clarke's claims that they are not state actors. ........ 9

H. Dismissing the official capacity claims is premature and would not eliminate any defendants. ........ 11

I. Plaintiffs' complaint states plausible claims against both Clarke and Amuso. ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Cases**

*Accurso v. Infra-Red Servs.*,
23 F. Supp. 3d 494 (E.D. Pa. 2014) .......... 10

*Anderson v. Hansen,*
519 F. Supp. 3d 457 (E.D. Wis. 2021) .......... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 1

*Bellevue Drug Co. v. CaremarksPCS (In re Pharmacy Benefit Managers Antitrust Litig.),*
582 F.3d 432 (3d Cir. 2009) .......... 8

*Bistrian v. Levi*,
696 F.3d 352 (3d Cir. 2012) .......... 1

*Brown v. Wolf,*
Civil Action No. 2:16-cv-1081, 2021 U.S. Dist. LEXIS 31968 (W.D. Pa. Feb. 19, 2021) .......... 1

*Cannon v. City & Cty. of Phila.*,
No. 14-5388, 2014 U.S. Dist. LEXIS 178126 (E.D. Pa. Dec. 29, 2014) .......... 10

*Children First Found., Inc. v. Legreide*,
373 F. App'x 156 (3d Cir. 2010) .......... 5

*Dodd v. SEPTA,*
No. 06-4213, 2007 U.S. Dist. LEXIS 46878 (E.D. Pa. June 26, 2007) .......... 11

*Greenberg v. Haggerty,*
491 F. Supp. 3d 12 (E.D. Pa. 2020) .......... 7

*Hellyer v. Cty. of Bucks*,
No. 10-2724, 2014 U.S. Dist. LEXIS 13785 (E.D. Pa. Jan. 31, 2014) .......... 11

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
3 F.4th 887 (6th Cir. 2021) .......... 7

*Johnson v. McGinley*,
No. 4:18-CV-01714, 2021 U.S. Dist. LEXIS 178618 (M.D. Pa. Sep. 18, 2021)..... 10

*Jutrowski v. Twp. of Riverdale*,
904 F.3d 280 (3d Cir. 2018) ........ 9

*Kegerise v. Susquehanna Twp. Sch. Dist.*,
325 F. Supp. 3d 564 (M.D. Pa. 2018) ........ 5

*Monteiro v. City of Elizabeth*,
436 F.3d 397 (3d Cir. 2006) ........ 4

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*,
653 F.3d 290 (3d Cir. 2011) ........ 4

*Robinson v. Pittsburgh,*
120 F.3d. 1286 (3d Cir. 1997) ........ 5

*Rode v. Dellarciprete*,
845 F.2d 1195 (3d Cir. 1988) ........ 5

*Rosenberger v. Rector and Visitors of the Univ. of Va.,*
515 U.S. 819 (1995) ........ 4

*Springer v. Henry*,
435 F.3d 268 (3d Cir. 2006) ........ 3

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 7

*Texas v. Johnson*,
491 U.S. 397 (1989) ........ 7

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021) ........ 3, 6

*Wash.-Pope v. City of Phila.*,
No. 12-4300, 2015 U.S. Dist. LEXIS 158522 (E.D. Pa. Nov. 23, 2015) ........ 8

**Other Authorities**

Third Circuit Civil Pattern Jury Instruction 4.4.3 (last updated August 2020)... 9, 10

Third Circuit Civil Pattern Jury Instruction 4.6.3 (last updated August 2020)......... 9

Third Circuit Civil Pattern Jury Instructions 4.3 and 4.4.2 (last updated August 2020) .......... 10

**Rules**

Fed. R. Civ. P. 8(d)(2) .......... 10

Fed. R. Civ. P. 12(b)(6) .......... 8

## INTRODUCTION

Defendants' various arguments for dismissal of the complaint all lack merit. Plaintiffs have pleaded plausible facts that, under well-established law, confirm their entitlement to relief from Defendants' unconstitutional practices and policies. Plaintiffs' detailed, 63-page complaint demonstrates that Defendants discussed, agreed, and executed a plan to censor public comments that were critical of the school board, school employees, and policies—and that they continue to silence critical viewpoints. Indeed, this Court's entry of a preliminary injunction finding that Plaintiffs are likely to succeed on the merits, has effectively already decided many of the issues raised in Defendants' motion.

## STANDARD OF REVIEW

The touchstone of the pleading standard complaint is plausibility; that is, a complaint must contain sufficient facts, accepted as true, to state a plausible claim on its face. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A plaintiff need only show the possibility, not the probability of recovery. *Id.*

To evaluate plausibility, a court first outlines the elements a plaintiff must prove. *Id.* Second it strips away any conclusory allegations. *Id.* Third, it looks at the remaining factual allegations, assumes their veracity and makes reasonable inferences, and determines whether they make for a plausible claim. *Id.; see also Brown v. Wolf,* Civil Action No. 2:16-cv-1081, 2021 U.S. Dist. LEXIS 31968, at *17 n.6 (W.D. Pa. Feb. 19, 2021). The last step is context specific and requires the application of experience and common sense. *Bistrian,* 696 F.3d at 365 (citing *Iqbal*, 556 U.S. at 679).

Plaintiffs' claims easily meet this standard.

## Argument

### A. Plaintiffs set forth ample plausible First Amendment claims.

Defendants' motion studiously ignores numerous allegations contained in Plaintiffs' complaint. Those show that the Defendants discussed, plotted, and executed a plan to silence critics of the school board, district employees, and in particular, the district's newly minted Equity Policy.

At least four different factual clusters describe instances of unlawful viewpoint discrimination. First, the complaint describes how Dr. Gibson asked the school board president, and other actors, to erase Doug Marshall's comments about the Equity Policy from the publicly posted video of the February 18, 2020 school board meeting because his views were offensive. ECF No. 1, ¶¶ 62-85. Gibson also asked the board to implement an in-the-moment muting protocol for so-called "dog whistles." *Id.* at ¶ 75. In making this request, Gibson specifically stated that "I do not believe the Pennsbury School District agrees with Marshall's *viewpoint*[.]" *Id.,* ¶ 70. Moreover, the allegations indicate that the school board president stated her agreement and also agreed to publicly apologize for not stopping Marshall's comments. *Id.,* ¶¶ 76-79, 83-85. Moreover, the complaint alleges that each "individual Defendant board member was well-aware of the censorship occurring in his or her presence, acquiesced in it, endorsed Toy-Dragoni's commitment to censorship, and supported the adoption of more censorious policies as a reaction to Plaintiffs' speech." *Id.,* ¶ 105.

Second, the complaint describes the infamous "you're done!" episode at the May 20, 2021 school board meeting, where Assistant Solicitor Amuso, repeatedly interrupted, spoke-over, and cut-off Plaintiffs Daly, Marshall, and Abrams. *Id.,* ¶¶ 89-101; *see also id.* at 3 (link.ifs.org/PennsburyCensorship).

Third, the complaint describes Solicitor Clark's interruption, speaking over, and warning of Plaintiff Simon Campbell, during the June 17, 2021 meeting, when he

began to criticize the school board president by name. *Id.,* ¶¶ 102-104. Other examples of viewpoint discrimination abound, including the screening and rejection of Abrams's and Daly's written comments under Policy 903. *Id.,* ¶¶ 38-57. Fourth, the complaint describes the existence and implementation of the address announcement policy, which serves no purposes other than to discourage controversial speech. *Id.* ¶ 107.

It is self-evident that Plaintiffs' detailed recitation of facts state viable claims of repeated viewpoint discrimination by the Defendants. These claims sound in pre-enforcement, with respect to future enforcement, but they are also retrospective with respect to completed violations, for which plaintiffs seek nominal and punitive damages. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (upholding action for nominal damages where "undisputed that [plaintiff] experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him"); *Springer v. Henry*, 435 F.3d 268, 282-83 (3d Cir. 2006) (affirming punitive damages for First Amendment violation where defendant displayed "attitude," was "upset," and "angry and spoke [to plaintiff] with a lot of emotion").

Defendants' reliance on *Anderson v. Hansen,* 519 F. Supp. 3d 457, 464-67 (E.D. Wis. 2021), is unavailing. *Anderson*'s reasoning that the removal of the plaintiff's comments from the video archive of the school board meeting constituted government speech, is unpersuasive. The government posts recordings of its meetings as a means of facilitating access to public discussion and as record of past proceedings, not as a statement of its own views. Nobody believes, nor would the school board ever assert, that the people who come to speak at public comment are speaking for the school board. In the sense that Defendants "speak" by choosing to broadcast school board meetings, they cannot censor all the speech critical of them

and their views on the theory that speech, once broadcast by the government, somehow becomes exclusively the government's speech and not the speakers'.

To accept this reasoning, would also imply government endorsement of all other, non-censored public comments at school board meetings, which simply goes too far. Public comments are just that: comments from members of the public, not the government.

In any event, the censorship of Marshall's March 2021 speech from the recording is but one example of many of Defendants' acts of viewpoint discrimination. And Defendants undisputed erasure of Marshall's speech is indicative of their hostility toward dissenting viewpoints.

Finally, this Court has already found that Plaintiffs are likely to succeed on their merits of their claims. ECF No. 52 at 11, 14, 16, 17. Implicitly, this means that Plaintiffs have stated plausible claims.

**B. Defendants are not entitled to qualified immunity because viewpoint discrimination violates a clearly established right.**

It is axiomatic that viewpoint discrimination is almost always illegal, even in limited public forums. *Rosenberger v. Rector and Visitors of the Univ. of Va.,* 515 U.S. 819, 829 (1995). If the government allows some speech on a certain subject, it *must allow all viewpoints* on that subject, even ones the government may disfavor. *Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*, 653 F.3d 290, 296 (3d Cir. 2011) (emphasis added).

Moreover, in this Circuit, it is "clearly established that when a public official excludes…a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006). Thus, in Monteiro, the Third Circuit held that a city council president was not entitled to qualified immunity if she ejected another councilmember "on the basis of viewpoint." *Id.* Similarly, in a case involving

advocacy messages on personalized license plates, the Third Circuit held that qualified immunity was unavailable where the plaintiffs had made a plausible claim of viewpoint discrimination. *Children First Found., Inc. v. Legreide*, 373 F. App'x 156, 160 (3d Cir. 2010). "[E]ngaging in viewpoint discrimination… *is a violation of a clearly established constitutional right.* Granting Defendants qualified immunity is therefore patently inappropriate at this stage of the proceedings." *Id.* (emphasis added)

Among the core allegations in this case is that the Defendants erased public comments and instituted a real-time censorship regime to stop critical comments that they did not like. Believing such actions to be legal defies common sense. Defendants' actions were unconstitutional and are not entitled to qualified immunity.[1]

**C. The individual Defendants acquiesced to the suppression of speech that was critical of the board, its policies, and district employees.**

Personal involvement in a civil rights violation can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Robinson v. Pittsburgh,* 120 F.3d. 1286, 1294 (3d Cir. 1997); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Acquiescence does not require a statement of assent, out loud; *acquiescence can occur through silent acceptance*." Third Circuit Model Civil Jury Instruction 4.6.1 at 29-30 (last updated August 2020) (emphasis added).

The complaint alleges that many of the most egregious acts to suppress dissent took place at public meetings, in full view of a quorum of the school board. Moreover, these violations occurred over the course of several meetings and involved the enforcement of policies re-affirmed by the board as a whole through

[1] Qualified immunity also would only apply to individual capacity claims for damages and is inapplicable to official capacity claims. *Kegerise v. Susquehanna Twp. Sch. Dist.*, 325 F. Supp. 3d 564, 576 (M.D. Pa. 2018).

discussion and repeated public announcement. *See, e.g.,* ECF No. 1, ¶¶ 61, 84, 98-101, 105.

This is in addition to the elaborate plan, set forth in official district emails, proposed by Gibson, and apparently agreed to by the board, to erase Doug Marshall's comments from the public record and institute real-time censorship. *Id.,* ¶¶ 62-85. Unless some of the Defendants were on an undisclosed leave of absence from December 2020 through May 2021, the allegations and reasonable inferences to be drawn from them, plausibly establish that the school board defendants were aware and approved of Pennsbury's policy and practice of suppressing public dissent. As previously discussed, Dr. Gibson instigated many of the most extreme measures and was thus personally involved. Ms. Langtry, who is only sued in her personal capacity, was personally involved in memory-holing video comments, and rejecting written comments.

Plaintiffs have shown ample facts to support personal involvement or supervisory liability for each of the defendants, especially at this stage of the proceedings.

**D. Simon Campbell has standing because his speech was disrupted and he is self-censoring.**

Defendants' claim that Campbell lacks standing because he continued to speak at board meetings is meritless. First, as noted *supra*, plaintiffs' claims are not merely prospective, but also retrospective. The complaint indicates that Clarke "loudly interrupted and began speaking over Campbell" during Campbell's public comment, and warned him against "personally direct[ed]" speech. ECF No. 1, ¶ 104. Campbell has standing to pursue that completed violation, *Uzuegbunam,* 141 S. Ct. at 802, even if he had no intention of ever speaking at board meetings again.

Second, "a plaintiff satisfies the injury-in-fact requirement" in pre-enforcement cases "where he alleges an intention to engage in a course of conduct arguably

affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation marks omitted). Campbell intends to keep speaking, his speech is at least arguable affected with a First Amendment interest, his speech is subject to the challenged policies and practices, and there is a credible threat of continued enforcement. The Court can bar that enforcement.

Indeed, the complaint alleges ongoing self-censorship by each of the plaintiffs, including Campbell. *Id.,* ¶ 106. Given the events that are alleged—shouting down, interrupting, and terminating comments; editing comments out of the video, and rejecting written comments—these averments are more than plausible enough to confer standing. Moreover, it is reasonable to infer that Campbell could conclude that he too could be subject to enforcement of Policy 903 in the same way that the other plaintiffs experienced. Indeed, Clarke specifically warned Campbell to that effect. *Id.*

It is well-established that self-censorship due to a credible threat of enforcement confers standing to bring a pre-enforcement challenge. *See, e.g., Greenberg v. Haggerty,* 491 F. Supp. 3d 12, 23 (E.D. Pa. 2020) (finding standing for an attorney who alleged self-censorship under Rule of Professional Conduct 8.4(g)).

**E. This Court has already ruled that most of the operative terms of Policies 902 and 922 are facially invalid.**

Many of the operative terms of Policies 903 and 922 invite viewpoint discrimination, making them facially invalid. As this Court recognized, the provisions used to terminate the so-called offensive comments ("abusive" and "personally directed") "prohibit speech purely because it disparages or offends." *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894 (6th Cir. 2021); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the

expression of an idea simply because society finds the idea itself offensive or disagreeable"); ECF No. 52 at 10.

In its opinion enjoining the disputed parts of Policies 903 and 922, this Court has already held that Defendants have not met their burden of showing that the terms "personally directed," "abusive," "offensive," "otherwise inappropriate," "personal attack," "inappropriate," and "intolerant" were facially constitutional. ECF No. 52 at 12-17. There is no good reason for the Court to reverse its prior order when considering the Rule 12(b)(6) motion, which is even more deferential to the plaintiff. Indeed, absent new evidence or changed circumstances, that holding is now tantamount to law of the case. *See Bellevue Drug Co. v. CaremarksPCS (In re Pharmacy Benefit Managers Antitrust Litig.),* 582 F.3d 432, 439 (3d Cir. 2009); *Wash.-Pope v. City of Phila.*, No. 12-4300, 2015 U.S. Dist. LEXIS 158522, at *24-26 n.19 (E.D. Pa. Nov. 23, 2015).

**F. Defendants enforcement of their own policies establishes municipal liability.**

Defendants attempt to re-cast Counts II and IV as claims for "selective enforcement," but Plaintiffs have claimed viewpoint discrimination, both facially and as-applied. This Court has already ruled that "the District has not met its burden to show that the as-applied challenge is unlikely to succeed on the merits." ECF No. 52 at 11. This holding is also now tantamount to law of the case, and there is no basis for the Court to rule differently on the motion to dismiss.

In addition, Defendants assert that Plaintiffs' as-applied challenge is "subject to the restraints of *Monell*." It is not clear what Defendants mean by that statement. It is undisputed that Policies 903 and 922 are official Pennsbury policies. Moreover, many of the complained-of actions took place at public meetings, in full view of the school board, which has complete and final control over local school matters under Pennsylvania law. If Plaintiffs prevail on their as-applied challenges, municipal

liability is virtually a foregone conclusion. *See* Third Circuit Civil Pattern Jury Instruction 4.6.3 at 39 (last updated August 2020) (official policy or custom includes official rules adopted or ratified by a legislative body, official statements, or settled practice).

**G. Plaintiffs have pleaded a viable conspiracy to violate civil rights, especially in light of Amuso and Clarke's claims that they are not state actors.**

Defendants ask this Court to dismiss Plaintiffs' § 1983 conspiracy to violate civil rights claim because (1) they claim no agreement was shown and (2) the intra-corporate conspiracy doctrine prevents employees of an organization from conspiring with each other. But Defendants' assertions are misplaced because plausible facts support the existence of an agreement to violate First Amendment rights and it is an open question whether the intra-corporate conspiracy doctrine even applies here or whether Amuso and Clarke were operating within their scopes of employment or as private actors. Indeed, they appear to claim that they were private actors. ECF No. 43-1 at 16-17.

First, the internal email communications alleged in the complaint set forth an agreement to erase Marshall's comments from the video record based on viewpoint and also to institute a viewpoint-based real-time censorship regime. ECF No. 1, ¶¶ 69-85. The infamous "you're done" episode, illustrates the repeated implementation of real-time censorship, shortly thereafter. *Id.,* ¶¶ 89-101. Indeed, the conspiracy may reach as far back as the December, 2020 board meeting, where Defendants openly discussed rejecting written comments that offended them. *Id.* ¶¶ 41-44.

These allegations present plausible facts from which one can reasonably infer the existence of an agreement to violate civil rights and concrete steps toward the implementation of the agreement. *See* Third Circuit Civil Pattern Jury Instruction 4.4.3 at 22 (last updated August 2020); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-97 (3d Cir. 2018) ("To prevail on a conspiracy claim under § 1983, a

plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights").

Defendants further assert that the intra-corporate conspiracy doctrine prevents them from agreeing with themselves. But even if that state law doctrine applies to federal claims, this is a highly factual inquiry and one that is not appropriate for resolution at the motion to dismiss stage. *Cannon v. City & Cty. of Phila.*, No. 14-5388, 2014 U.S. Dist. LEXIS 178126, at *20-25 (E.D. Pa. Dec. 29, 2014) ("Federal courts in the Third Circuit have explained that agents acting in their individual capacities rather than their official capacities can be liable for civil conspiracy."); *Accurso v. Infra-Red Servs.*, 23 F. Supp. 3d 494, 514-16 (E.D. Pa. 2014). Indeed, there is some question about whether a state doctrine could ever be used to limit federal civil rights being adjudicated in federal court. *Johnson v. McGinley*, No. 4:18-CV-01714, 2021 U.S. Dist. LEXIS 178618, at *16-17 (M.D. Pa. Sep. 18, 2021) (noting that in the Third Circuit "such a defense does *not* apply to civil rights actions, particularly when an individual is not acting in his or her official capacity").

Here Plaintiffs have pleaded official and individual capacity claims against all Defendants except Langtry. ECF No. 1, ¶¶ 5-6, 8-18. Pleading in the alternative is specifically allowed. Fed. R. Civ. P. 8(d)(2). In fact, Amuso and Clarke have asserted that they were not acting in their official capacities. ECF No. 43-1 at 16-17.

One way for Plaintiffs to prove their case is to show that Defendants "acted under color of state law" in violating Plaintiffs' speech rights. *See* Third Circuit Civil Pattern Jury Instructions 4.3 and 4.4.2 at 8, 16 (last updated August 2020). Alternatively, Plaintiffs are entitled to show that Amuso and Clarke (and possibly other Defendants), acting in their individual or private capacities, conspired to use school district authority against Plaintiffs to silence their speech. *See* Third Circuit Civil Pattern Jury Instruction 4.4.3 at 22-23 (last updated August 2020).

On which of these theories Plaintiffs will ultimately prevail is not something that can be sorted out on a motion to dismiss and will require further development of the factual record through discovery. Plaintiffs are entitled to the benefit of any doubt and should be allowed to proceed with their civil conspiracy claim.

**H. Dismissing the official capacity claims is premature and would not eliminate any defendants.**

Although it is true that bringing an official capacity claim against a municipal employee is the equivalent of bringing an action against a government entity, it is within this Court's discretion to determine whether a claim is redundant. *Hellyer v. Cty. of Bucks*, No. 10-2724, 2014 U.S. Dist. LEXIS 13785, at *24-25 (E.D. Pa. Jan. 31, 2014). In particular, where a defendant will still have to answer for their individual capacity claims, courts have declined to dismiss official capacity claims since doing so would "serve no laudable purpose." *Id.; see also Dodd v. SEPTA,* No. 06-4213, 2007 U.S. Dist. LEXIS 46878, at *18-24 (E.D. Pa. June 26, 2007) (noting that state officials may be held liable for acts within or without their official authority). That is particularly true in a case such as this, were the facts have yet to be fully developed, and some of the defendants are interposing defenses that they were not state actors. Moreover, merging the claims would not result in a single defendant being dismissed from the case, because all individuals, except Langtry (who is retired and sued in her individual capacity only), are sued in their official and individual capacities.

**I. Plaintiffs' complaint states plausible claims against both Clarke and Amuso.**

As previously discussed, *infra,* Plaintiffs have plausibly asserted that defendants Amuso and Clark acted as enforcers of policy 903. ECF No. 1, at ¶¶ 89, 104. Amuso by interrupting and shouting down three of the plaintiffs and Clarke by interrupting and warning Simon Campbell, all during public school board meetings where they were acting as Pennsbury's solicitors. Some of Defendant board

members thanked Amuso for his shouting down and expulsion of Plaintiffs. *Id.* ¶¶ 98-100.

In addition, Mr. Clarke is asserted to have laid the legal groundwork for screening comments by viewpoint under Policy 903. ECF No. 1, ¶ 43. And the complaint quotes an email by Defendant Toy-Dragoni, in which she declares that "our solicitors . . . make the decision that something is in violation" of the speech policies. *Id.* ¶ 30. These assertions all provide a plausible basis for claims against them.

In addition, their assertion that they are not state actors, even if true, is not enough to get them out of this lawsuit. On the one hand, if they were clothed in the trappings of state power, then they were acting under color of state law. Alternatively, if they were private actors they can still conspire with state actors to violate someone's civil rights. These issues may all be sorted out during discovery, but it is inappropriate to dismiss either Clarke or Amuso at this stage, or any of the claims against them. In fact, in its recent opinion enjoining key portions of Defendants' policies, this Court repeatedly cited to behavior or comments made by both Clarke and Amuso. ECF No. 52 at 4-5, 10-11, 15. This points to a high degree of personal involvement with the events at issue in this case and makes denial of this motion a necessity.

CONCLUSION

Defendants' motion to dismiss should be denied.

DATED: November 24, 2021

Respectfully submitted,

By:

*s/Endel Kolde*
Alan Gura*
Endel Kolde*+
Martha Astor*+
INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036
202.301.3300
agura@ifs.org
dkolde@ifs.org
mastor@ifs.org

*s/Michael Gottlieb*
Michael Gottlieb
PA Bar No. 36678
VANGROSSI & RECHUITTI
319 Swede Street
Norristown, PA 19401
610.279.4200
mikem1a1@aol.com

* Admitted pro hac vice
\+ Not yet admitted to D.C. Bar,
Supervised practiced per D.C. Ct. Appeals R. 49(c)(8)